UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHIQUITA SMITH                                              CIVIL ACTION
ON BEHALF OF T.S.

VERSUS                                                     NO. 14-2349

CAROLYN W. COLVIN, ACTING                                  SECTION "A" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


**FINDINGS AND RECOMMENDATION**

Chiquita Smith, on behalf of her minor child, T.S., seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Act. 42 U.S.C. § 402 et seq. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 12, plaintiff filed a motion for summary judgment. Record Doc. No. 13. The court treats her summary judgment motion as a memorandum of facts and law regarding her instant appeal from the Commissioner's final decision. Defendant filed a timely reply memorandum of facts and law. Record Doc. No. 14.

I.    PROCEDURAL HISTORY

T.S. was seven years old when her mother applied for SSI on her behalf on May 17, 2012, alleging a disability onset date of April 1, 2008, due to a learning disability and attention deficit hyperactivity disorder.  (Tr. 106, 125).   After the application was denied, plaintiff filed a timely request for a hearing, which was conducted before an ALJ on May 30, 2013.  (Tr. 34-54).  T.S. was eight years old on the date of the hearing.  The ALJ issued a decision on June 14, 2013, finding that T.S. was not disabled.  (Tr. 17-29).  After the Appeals Council denied plaintiff's request for review on September 26, 2013 (Tr. 1-3), the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review.

II.   STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the ALJ's opinion is not supported by substantial evidence.

III.  ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

A.    T.S. was a school-age child on the date of her application and is currently a school-age child.

B.    She has severe impairments consisting of attention deficit hyperactivity disorder and learning disability.

C.    Plaintiff's impairments do not meet or medically equal the criteria for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically considered Listings 112.04, 112.08 and 112.11 for mood disorders, personality disorders and attention deficit hyperactivity disorder, respectively.

D.      T.S. does not have an impairment or combination of impairments that functionally equals the severity of the listings.

E.      The claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.   Her allegation of disability is not supported by the objective medical evidence.

F.      T.S. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself.  She has no limitations in the domains of moving about and manipulating objects, and health and physical well-being.

G.      T.S. has not been disabled since May 17, 2012, the date of the application.

(Tr.  20-28).

IV.    <u>ANALYSIS</u>

A.      <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);

Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Harper v. Barnhart, 176 F. App'x 562, 565 (5th Cir. 2006); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act.  42 U.S.C. § 423(a)(1)(D).  In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process.  This statute applies to all child disability applicants who filed claims on or after August 22, 1996 or whose cases were not finally adjudicated before that date.  Id. § 211(d)(1)(A)(I).

4

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(i).

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability. The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity. If the answer is "yes," the claimant will be found not disabled. If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment. If not, the claimant will be found not disabled. If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in Appendix 1, Subpart P, Part 404 of the Commissioner's regulations (the "Listings"). If the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled. If not, the claimant will be found not disabled. 20 C.F.R. § 416.924 (2013).

An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and

completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1).  An impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain.  Id. § 416.926a(a).

The claimant has the burden of proof at all steps of the inquiry.  Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 851 (11th Cir. 2015); Taylor ex rel. D.M.T. v. Colvin, 555 F. App'x 643, 643-44 (8th Cir. 2014), cert. denied, 135 S. Ct. 456 (2014) (citing Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004)); E.R.H. v. Comm'r of Soc. Sec. Admin., 384 F. App'x 573, 575 (9th Cir. 2010) (citing 20 C.F.R. §§ 404.1512(a), 404.1512(c)); Lopez v. Barnhart, 176 F. App'x 618, 619 (5th Cir. 2006); Lowery v. Comm'r, Soc. Sec. Admin., 55 F. App'x 333, 341 & n.10 (6th Cir. 2003).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.    Factual Background

The claimant's mother, Chiquita Smith, testified that T.S. is disabled because she "is always getting into it with someone," does not follow directions and cannot complete

her homework or tests at school.  She stated that the school had threatened in the last year to put T.S. in special education classes if she did not pass her grade with at least a C. Plaintiff stated that T.S. has threatened to hurt herself and her twin sister because T.S. fails to believe that she cannot do what other children do at school.  Smith said that her daughter cannot pass and cannot comprehend what she is doing.  (Tr. 40).

Plaintiff testified that T.S. is in second grade and is supposed to pass into the third grade, except that she did not yet have the final report card for the year.  She said that T.S. had a D average on her last report card.  She stated that her daughter had received "504" accommodations[1] during the recent school year.  She said the school had told her that T.S. would be in special education the following year if she did not do well with those accommodations.  Plaintiff said the accommodations consisted of her daughter receiving one-on-one help, instructions and test questions being read to her during class and the helper assisting T.S. to understand what she was doing.  (Tr. 41).

Smith testified that Dr. Jackson, her daughter's treating physician, diagnosed T.S. with attention deficit hyperactivity disorder in 2011 and prescribed Vyvanse[2] for her. Plaintiff said that Dr. Jackson later changed the dosage of Vyvanse and then changed her

---

[1]T.S.'s school records refer to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

[2]Vyvanse (generic name: lisdexamfetamine) is "used to treat attention-deficit hyperactivity disorder . . . .  Vyvanse may help increase attention and decrease impulsiveness and hyperactivity . . . ." <u>PDRhealth</u> (PDR Network, LLC 2015), http://www.pdrhealth.com/drugs/vyvanse (visited June 4, 2015).

daughter's medication to 54 milligrams of methylphenidate[3] and one milligram of guanfacine[4] daily.  (Tr. 42-43).  She stated that Dr. Jackson initially prescribed 35 milligrams of methylphenidate and later increased it to 54 milligrams.  She testified that Dr. Jackson told her not to give the child any medications on weekends year-round.

Plaintiff said that T.S. has never been suspended or expelled from school, but had received detention six times during the past year for fighting and other reasons.  (Tr. 44-45).  She stated that T.S. does chores at home, including hand-washing dishes, sweeping the floor, cleaning her room and the bathroom, and folding and putting away her own clothes.  She said her daughter plays games on a Playstation and especially likes to play Mario Brothers.  (Tr. 45-46).  Smith testified that she lets T.S. play the games for about an hour at least three times per week, after the child finishes her homework and chores, and for about two hours at a time on weekends.  She said her daughter has friends at school and in the neighborhood with whom she runs around, plays tag and uses hula hoops, but that T.S. does not play any sports.  (Tr. 46-47).  Plaintiff stated that T.S. has a two-wheeled bike without training wheels.  She testified that T.S. has no difficulty going up and down stairs, lifting and carrying things, sitting, walking or standing.  (Tr.

---

[3]Ritalin (generic name:  methylphenidate) is used to treat attention deficit hyperactivity disorder and may help to increase attention and decrease impulsiveness and hyperactivity in people with attention deficit hyperactivity disorder.  Id., http://www.pdrhealth.com/drugs/ritalin (visited June 4, 2015).

[4]Intuniv (generic name:  guanfacine) is used to treat symptoms of attention deficit hyperactivity disorder.  Id. http://www.pdrhealth.com/drugs/intuniv (visited June 4, 2015).

47).  She said her daughter has gone to the emergency room for fevers, for which she was treated and released, but never because of behavior issues.

Smith testified that T.S. sometimes gets an F or a D in conduct because she constantly pokes someone, does not sit in her seat, does not mind her own business or gets into trouble at school.  She said her daughter gets into physical fights with her siblings all the time and that the fights draw blood.  (Tr. 48-49).

Plaintiff stated that T.S. has been on her new medication for seven to eight months.  She said her daughter goes to bed but does not sleep.  She stated that she has to stay up with T.S. until 3:00 or 4:00 a.m., and then has to drag her daughter out of bed at 11:00 a.m. or noon during the summer.   She testified that Dr. Jackson changed T.S.'s prescription for this reason.  She said he had prescribed two to three melatonin at night, but it did not work, and he had just prescribed something new the previous week, which plaintiff was planning to pick up on the day of the hearing.  (Tr. 49, 51).  She stated that T.S. says she sees a ghost or a man.  Plaintiff does not know if that is a side effect of her daughter's medication.  (Tr. 49-50).  She testified that she has to drag T.S. out of bed at 7:30 a.m. on school days, even though T.S. goes to bed at 8:30 p.m., because the child cannot sleep and gets up three to four times during the night.

Smith stated that T.S. can write and reads very slowly.  (Tr. 50).  She does not think her daughter's medications are helping, especially because T.S. stays up all night and then is very tired when she gets home from school.  She testified that the medications

have been changed many times.  Plaintiff stated that T.S. does not want to do her homework and has to be pushed to do it.  She said she has seen no difference in her daughter's attention span or distractibility since her recent medication changes. (Tr. 52). Smith testified that T.S. still does not follow directions, pay attention or focus, and that her daughter's teachers have told her the same thing.  She said that her aunt tutors T.S. for an hour twice a week for free, but she does not think it helps much and she cannot afford to pay a full-time tutor.  (Tr. 53).  She testified that T.S.'s father probably had attention deficit hyperactivity disorder and that he has some mental retardation in his family.  (Tr. 54).

  C. <u>Medical and School Evidence</u>

   I have reviewed the medical and school records in evidence and the ALJ's summary of this evidence.  (Tr. 22-25).  I find the ALJ's summary of the medical and school evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

  D. <u>The ALJ's Opinion Is Supported by Substantial Evidence</u>

   Plaintiff argues that the ALJ's opinion is not supported by substantial evidence. At step two of the childhood sequential evaluation, the ALJ found that T.S. has a learning disability and attention deficit hyperactivity disorder.  He found at step three that these impairments neither meet nor medically equal in severity any listed impairment.  The ALJ considered Listings 112.04, 112.08 and 112.11 for mood disorders, personality

disorders and attention deficit hyperactivity disorder, respectively.  Smith does not argue that T.S. meets any of these listings.

As to medical equivalence, the ALJ found none because he found that T.S. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself, and has no limitations in the domains of moving about and manipulating objects, and health and physical well-being.  Smith does not challenge any of these findings specifically and does not argue that T.S. has marked or extreme limitations in any particular domain.  She does not appear to challenge the findings regarding the domains of caring for oneself, moving about and manipulating objects, or health and physical well-being.  Rather, she appears to contend that the ALJ erred with respect to the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.  Smith bears the burden to show that T.S. meets or medically equals a listing.  Jones v. Astrue, No. 13-404-JJB, 2015 WL 1346244, at *4 (M.D. La. Mar. 23, 2015) (citing Selders v. Sullivan, 914 F.2d 614, 619-20 (5th Cir. 1990); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003)).

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller, 72 F. App'x at 158; Selders, 914 F.2d at 619; Tribble v. Colvin, No. 3:13-CV-2321-BF, 2014 WL 4805776, at *3 (N.D. Tex. Sept. 29, 2014); McKnight

11

v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009).  "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994)).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 5301 (citing 20 C.F.R. § 416.926(a); Soc. Sec. Ruling 83-19, at 91) (emphasis in original).  "An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify.  If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present." Gewin v. Astrue, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), report & recommendation adopted, 2011 WL 3954877 (W.D. La. Sept. 6, 2011) (citing Zebley, 493 U.S. at 530-31; Selders, 914 F.2d at 620); accord Taylor v. Astrue, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *8 (N.D. Tex. June 27, 2011), report &

recommendation adopted, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), aff'd, 706 F.3d 600 (5th Cir. 2012).

The requirements that an impairment and its severity be established by medical evidence apply to children who allege a mental disability.  20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(B), (C), (D).  Thus, Smith must identify specific medical evidence demonstrating that T.S. meets or medically equals all the criteria of a listing.  Information from non-medical sources, such as parents and teachers, "should also be used to supplement the record of the child's functioning to establish the consistency of the medical evidence and longitudinality of impairment severity."  Id. § 112.00(D).

Plaintiff has not identified substantial medical evidence that T.S. meets or medically equals any listing.  She argues generally that the diagnoses of attention deficit hyperactivity disorder and borderline intellectual functioning by clinical and medical psychologist, David Jackson, Ph.D., M.P., of Children's Hospital on January 12, 2012, are substantial evidence of disability.[5]  However, mere diagnoses of a listed impairment are insufficient to establish the requisite severity.  20 C.F.R. § 416.925(d); Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013) (citing Hames

---

[5]Smith asserts that Dr. Jackson also diagnosed oppositional defiant disorder.  However, Dr. Jackson listed this disorder as one of three additional, possible diagnoses to be ruled out.  (Tr. 218).  On October 11, 2012, he again diagnosed attention deficit hyperactivity disorder and borderline intellectual functioning.  (Tr. 230).  No diagnosis of oppositional defiant disorder was ever confirmed.

v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013), aff'd, 586 F. App'x 505 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)).

Smith bases her arguments in large part on her testimony about her daughter's symptoms and functional limitations, as well as her assertions in her Function Report submitted to the Commissioner on May 17, 2012 (Tr. 112-20), and her reports to Dr. Jackson and Carlos Kronberger, Ph.D., the consultative examiner who evaluated T.S. on July 16, 2012.  However, the ALJ found that Smith's allegations about the intensity, persistence and limiting effects of her daughter's symptoms were not entirely credible and that her allegation of disability was not supported by the objective medical evidence.

Determining the credibility of subjective evidence of disability is a necessary part of the ALJ's consideration of the evidence.  Luckey v. Astrue, 458 F. App'x 322, 326 (5th Cir. 2011) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462.  The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)).  Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court.  McKnight, 340 F. App'x at 181 (citing Newton,

14

209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459).  The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required.  James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).  The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for his credibility findings, supported by the evidence.  Luckey, 458 F. App'x at 324; Giles, 433 F. App'x at 249; Newton, 209 F.3d at 452.  The ALJ complied with these requirements in the instant case.

The ALJ stated that plaintiff's testimony about medication duration and dosage changes was questionable.  This finding is supported by the evidence, as no medical records document Smith's testimony in that regard.  Dr. Jackson's single narrative report in the record, dated January 12, 2012, states that he began a regimen of over-the-counter melatonin and proper sleep hygiene techniques for T.S.'s insomnia when he first saw her in June 2011.  His January 2012 report notes no complaints about or changes to that regimen.  He states that he prescribed 20 milligrams of Vyvanse once a day for the first time on January 12, 2012.  On October 11, 2012, he filled out a form that referred to and incorporated his January 12, 2012, report, but he does not indicate that he had examined T.S. or changed her medications since then.  There are no other medical records from Dr. Jackson in the administrative record.

Contrary to Smith's testimony, the documentary evidence in the record shows that T.S. received adequate grades in most subjects and never received bad conduct grades. The only report card in evidence is her first grade final report for 2011-2012. She received an A in home room conduct in all four quarters and an "S" (Satisfactory) in both conduct and content in Health and Physical Education in all four quarters. In her academic subjects, she had one final D, four C's and two S's. The report card states that she "is improving" in her reading. Her first grade teacher stated in a letter dated October 9, 2012, that T.S. was very distracted, did not follow directions and had to be redirected often during the prior school year, but she mentions nothing about T.S.'s conduct. T.S. was promoted to second grade. Also on October 9, 2012, her second grade teacher stated in a letter that T.S. has a very hard time staying focused and understanding her school work, but her "behavior is fine." (Tr. 172).

The ALJ found that the medical and school records indicated that T.S.'s attention deficit hyperactivity disorder was responsive to medication therapy and that her learning disability was accommodated with one-on-one instruction. To establish disability, Smith must point to substantial medical evidence that T.S. has marked limitations in two domains of childhood functioning or extreme limitations in one.

"Marked" in this context means that the claimant's

impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities. [A child's] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity

16

or when the interactive and cumulative effects of [her] impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2).

"Extreme" means that the claimant's

impairment(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities.  [A child's] day-to-day functioning may be very seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities.  "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating . . . give[n] to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.

Id. § 416.926a(e)(3).

Substantial medical evidence supports the ALJ's findings that T.S. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself.  The medical evidence is sparse.  The ALJ accurately summarized the reports of Dr. Jackson and Dr. Kronberger, who both diagnosed attention deficit hyperactivity disorder and borderline intellectual functioning.  Dr. Jackson also diagnosed an adjustment disorder with mixed disturbance of emotions and conduct, while Dr. Kronberger also diagnosed a learning disorder.

The ALJ afforded great weight to Dr. Jackson's opinions, which the ALJ found indicate that T.S. has only moderate limitations in functioning.  (Tr. 23).  Dr. Jackson

17

stated on a form "Analysis of Functional Areas" on October 11, 2012, that T.S. has "moderate" difficulty independently initiating, sustaining or completing activities. (Tr. 231). The form defines "moderate" as "more than slight interference, but less than a marked restriction" and defines "marked" as it is defined in the Social Security regulations. (Tr. 230). Dr. Kronberger observed that T.S. had "moderate cognitive deficits across the board" and "significant learning disabilities," but she had a fair ability to follow directions, intelligible articulation, fair expressive language skills and adaptive skills close to age-expected levels, except in areas affected by her attentional and learning deficits. She was "moderately inattentive on tasks and restless" during Dr. Kronberger's assessment, requiring redirection and prompting. (Tr. 224). The reports of these two psychologists substantially support the ALJ's findings that T.S. has less than marked limitations in the four domains.

The ALJ gave the "greatest weight" to the opinion of Charlotte Ducote, Ph.D., who reviewed the entire record on July 30, 2012. (Tr. 58-63). Dr. Ducote concluded that T.S.'s school records revealed "average grades, no conduct problems" (Tr. 58), and that T.S. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. Dr. Ducote's opinion, based on the reports of Drs. Jackson and Kronberger, that the child's limitations in these areas do not reach listing-level severity is <u>not</u> contradicted

by any other medical evidence and is substantial evidence on which the ALJ could rely.

"State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i). "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); accord Butler v. Barnhart, 99 F. App'x  559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)). The ALJ did not err by assigning great weight to Dr. Jackson's medical opinions and greatest weight to Dr. Ducote's opinions, in preference to Smith's own less than credible testimony, reports to the Commissioner and to the doctors, and characterization of T.S.'s school records.

The pertinent regulations and Social Security Rulings instruct that the more support a child receives, the less independently she functions and the more severe the Commissioner will find her limitation to be.  The Commissioner "will generally find that such a child has a limitation."  SSR 09-2p, 2009 WL 396032, at *5 (emphasis added); see also SSR 09-1p, 2009 WL 396031, at *6 ("Such a child will have a limitation, even if he is functioning well with the help or support.") (emphasis added).  The ALJ followed this guidance when he considered the evidence of T.S.'s medical treatment and classroom

19

accommodations, and found that she has limitations in four domains.  However, a finding of a <u>marked</u> limitation is <u>not</u> mandated simply because the child functions better with placement in special education classes or other supports.  <u>Richardson v. Barnhart</u>, 136 F. App'x 463, 466 (3d Cir. 2005) (citing 20 C.F.R. § 416.924a(b)(7)); <u>Scotino v. Colvin</u>, No. 4:12cv0674, 2013 WL 5291722, at *10 (E.D. Mo. Sept. 19, 2013) (quoting <u>Buckner v. Astrue</u>, 646 F.3d 549, 556 (8th Cir. 2011)); <u>T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.</u>, No. 10-5229, 2011 WL 3235735, at *7 (D.N.J. July 26, 2011), <u>aff'd</u>, 497 F. App'x 158 (3d Cir. 2012).

> As a judge in the Western District of Louisiana noted in similar circumstances,
>
> there will almost always be a degree of subjectivity and judgment inherent in determining whether someone's limitation is marked or less than marked.  The ALJ looked to evidence from medical professionals, a teacher, and the parent.  He discussed all of that evidence in significant detail . . . and afforded the opinions' weight based on how consistent he found them to be with the overall record.
>
> Plaintiff complains that a proper weighing of the opinions of the professionals should have resulted in findings of greater degree of limitation.  None of the various reports or opinions may be perfect, but together they provide more than enough to meet the substantial evidence standard, which requires that this court affirm the Commissioner's decision.  To warrant judicial relief, the court would have to find that the evidence was so compelling in favor of the claimant that the ALJ was required to find marked limitations in two domains, when he found none in his actual opinion.  The evidence is not so compelling.  One may make reasonable arguments that the evidence should have been assessed differently in the first instance, but those arguments are beyond the limited role of the court in the review process.

Lee o/b/o R.L. v. Comm'r, Soc. Sec. Admin., No. 11-cv-0910, 2013 WL 639060, at *4 (W.D. La. Jan. 29, 2013), report & recommendation adopted, 2013 WL 639058 (W.D. La. Feb. 21, 2013).

In the instant case, the ALJ "has not failed to consider [the evidence cited by plaintiff]; rather, he failed only to give it the weight plaintiff desired.  In attempting to resolve the various conflicts and inconsistencies in the record in accordance with the applicable standards, the ALJ did 'precisely what an ALJ is instructed to do.'" N.R.R. ex rel. Davenport v. Astrue, No. 4:12CV54, 2013 WL 1090397, at *9 (E.D. Mo. Mar. 15, 2013) (quoting Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666-67 (8th Cir. 2003)); accord Chambliss v. Massanari, 269 F.3d 520, 523 (5th Cir. 2001); Newton, 209 F.3d at 452; McLaughlin v. Astrue, No. 1:11-CV-176-BL, 2013 WL 171902, at *4 (N.D. Tex. Jan. 15, 2013).

Accordingly, plaintiff's assignment of error lacks merit.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's motion for summary judgment be denied and her complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

New Orleans, Louisiana, this _____5th_____ day of June, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[6]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.